(35 Misc. Rep. 306.)

## In re BRENNER.

(Supreme Court, Special Term, Kings County. June, 1901.)

1. OFFICERS—RIGHT TO BOOKS AND PAPERS—COMPELLING DELIVERY.
   Code Civ. Proc. § 2471a, allowing an application by a public officer for a summary order committing to jail any one who has possession of books of the office and refuses to deliver them, does not apply to cases where the title to the office, as between rival claimants, is open to question.

2. JURY COMMISSIONER—APPOINTMENT.
   Laws 1901, c. 602, authorizing the appointment of jury commissioners of Kings county by justices of the supreme court, is violative of Const. art. 10, § 2, prohibiting the appointment of county officers by other than the board of supervisors or other county authorities.

Application by William E. Melody for a stay on appeal from an order granted on the application of Jacob Brenner, as commissioner of jurors in the county of Kings, to compel the applicant to deliver books and papers appertaining to the office of commissioner of jurors. 70 N. Y. Supp. 744. Stay granted.

Robert H. Elder, for the motion.
Henry W. Goodrich, opposed.

GAYNOR, J. Of course the stay on appeal must be granted. There is no reason to deny it. There is conceded to be a grave question of the constitutionality of the act under which the petitioner was appointed to the office. That being so, the petitioner is without that clear legal title to the office which is necessary to entitle him to an order requiring the books and papers of the office to be turned over to him by the incumbent. The statute (Code Civ. Proc.

§ 2471a) allowing an application like this by "a public officer" for a summary order committing to jail any one who has possession of books and papers of the office, and refuses to deliver them to him, was not intended for a case where the applicant has not got into the office and thereby become "a public officer" for the reason that the office is in the adverse possession of another claiming under a title. At all events, the application cannot be made against such an incumbent when the title to the office as between the rival claimants is open to question and is in question, as is the case here. The statute only applies to cases where the applicant has an unquestionable prima facie legal title. By its terms it permits of no controversy as to title, but only of a hearing and decision of the bare question whether the person proceeded against has possession of such books and papers. If the title to the office be actually in question, the applicant has to be left to an action to oust the incumbent.

But if the test of the right to grant the order appealed from here were not the minor one whether the title is in genuine dispute, but the major one whether the act under which the petitioner claims is valid, and his title therefore good, then the reasons for deeming the act invalid are so grave that the usual fit and orderly course is to stay the enforcement of such order until the appeal from it can be decided.

I cannot accept the statement that the appointing officers under the act made a judicial determination of its constitutionality by appointing the petitioner. They could not judicially decide the question. They acted under no judicial sanction whatever. Their duty of appointing was not judicial, but purely ministerial. Gilbert v. Board, 136 N. Y. 180, 32 N. E. 554. They could have been required by this court by a writ of mandamus to make the appointment if the act be constitutional, and if it be not they could have been restrained in a proper suit from making the appointment, so as to settle the question in advance, and avoid a disturbance of the office. Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408. That they hold high judicial positions makes no difference, and it would be unfair and a just reproach to this court to permit that fact to warp the course of justice. It is so well known to our learned profession that there can be no judicial determination except upon due process of law as prescribed by the constitution, the very essence of which is a judicial hearing upon due notice prescribed by law to those to be affected in their rights, that it does not need to be so much as mentioned. The contrary suggestion is so feeble that I suppose I could by common consent have passed it by without notice.

By act chapter 322 of the Laws of 1858 the duties of making up the county jury lists and drawing jurors in Kings county were transferred from the county clerk, to whom they had theretofore belonged (2 Rev. St. p. 411), to an officer created by the said act and therein named "Commissioner of Jurors for the County of Kings." The act provided that such new officer should be appointed by certain specified county officers, viz., the county judge, the district attorney, the sheriff, the surrogate and the two side justices of the court of sessions.

This office of commissioner of jurors for the county has remained: ever since. The legislature has changed the appointing power from time to time (chapter 378, Laws 1862; chapter 821, Laws 1866; chapter 315, Laws 1870); being careful, however, to keep it in county officers as required by the constitution in respect of appointive county officers; until by act chapter 602 of the Laws of this year it professed to take it away from such county officers, viz., the two county judges, the surrogate and the county treasurer, and confer it on certain state officers, viz., the justices of the appellate division of the supreme court of the Second judicial department. It is claimed that this act is unconstitutional. A similar bill was passed last year, but the opinion of all of the judges and lawyers who considered it being that it was unconstitutional, the governor did not allow it to become an act.

Section 2 of article 10 of the new constitution adopted in 1894 provides as follows:

"All county officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of the respective counties. or appointed by the boards of supervisors, or other county authorities, as the legislature shall direct."

This is followed by a similar provision in respect of city, town and village officers; and the section then closes with a general provision, that:

"All other officers, whose election or appointment is not provided for by this constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct."

1. At the time of the adoption of the constitution of 1894 this office of commissioner of jurors had existed as a county office since 1858, and the said provision has to be deemed as adopted with reference to it and all other local offices then existing. Rathbone v. Wirth, 6 App. Div. 311, 40 N. Y. Supp. 535; Id., 150 N. Y. 473, 45, N. E. 15, 34 L. R. A. 408; People v. Rathbone, 145 N. Y. 438, 40 N. E. 395, 28 L. R. A. 384. The act in question does not create, or profess to create, a new office. On the contrary, it recognizes an existing county office, abridges the term of the incumbent and changes the appointing power from county to state officers. This is plainly against the constitution.

2. It is now said, however, and for the first time, that the office is not a county office, although in its creation it was required to be filled as such (i. e., by appointment of county officials), and has for 43 years been deemed such by all of us. Its true designation is said to be not a county office but a "local" office. This is a new use of that term in the nomenclature of offices. It has heretofore been used only in its generic sense to designate all excepting state offices. It may well be doubted whether this new use of it has any sanction, or, indeed, any meaning. By the framework of government established by the constitution we have state, county, town, city and village offices. To say that an office was a local one has always meant that it was not a state office, but an office of one of the politi--

cal subdivisions or municipal corporations of the state; and such is the statutory definition. Public Officers Law, § 2.

The suggestion seems to be that this office of commissioner of jurors as created in 1858 was and is such an adjunct of the supreme court as to be a part thereof, and therefore incapable of being a county office. It is conceded not to be a state office; but at the same time it has to be admitted that it is an office, and so it is called a "local" office. I own to not quite understand this. The relation of the commissioner of jurors to the supreme court is not so intimate as that of the county clerk. Nor does he belong to the staff of the supreme court. It could with as much reason be said that he belongs to that of the county court. His panel of jurors is for the use of the county court and the supreme court alike; and prior to the new constitution of 1894 he had no relation at all to the supreme court, for up to that time it used no jurors, and the commissioner's panel was for the county court, the court of sessions, the city court of Brooklyn, the circuit court and the court of oyer and terminer, the last two also being only county courts. Code Civ. Proc. § 1, amended.

The office was therefore not created in 1858 as an adjunct or part of the supreme court. If the legislature could in 1858 have empowered some court, or the judges thereof, to appoint a clerk or commissioner of that court to provide it with jurors, no such thing was done. On the contrary, a county office to provide jurors for all of the courts of the county, and to be filled by designated county officials in the manner prescribed by the said constitutional provision (for it was first adopted in the constitution of 1846), was created, and it has existed ever since.

3. But if the said act of this year could be construed as abolishing the said office of commissioner of jurors of Kings county, and creating a new office which is not a county office, it would still be violative of the said constitutional provision and void; for it is the "duties" of an office which constitute the office, and it is such duties that are protected and covered by the said provision, so that they cannot be taken out of the protection of such provision, and transferred to an officer not elected or appointed in the said prescribed manner, i. e., elected by the electors of the county or appointed by county officials, as has so often been pointed out by our highest court. Immediately on its adoption in 1894 such provision impounded, so to speak, all duties which then existed in county officers, i. e., it perpetually restricted the performance of such duties to such officers, or to other county officers elected or appointed in the said prescribed manner to whom the performance of such duties might be transferred by the legislature. It did not make it impossible for the legislature to transfer such duties to a new officer (except, of course, in cases where they are imposed by the constitution itself on a particular officer), but it did make it impossible for the legislature to transfer them to a new officer not elected or appointed in such prescribed manner.

This has been uniformly decided by our highest court from the beginning, and is so well known to our learned profession, that the citation of the authorities for it might well be omitted. That the said constitutional provision covered the official duties lodged in

local officers at the time of its adoption, and that such duties could not thereafter be transferred by the legislature to new officers not elected or appointed in such prescribed manner, was perceived from the start; for otherwise such provision could be frittered away by the process of transferring such duties to newly created officers not so elected or appointed, and the purpose of such provision, i. e., "to secure to the several recognized civil and political divisions of the state the right of local self-government" (People v. Albertson, 55 N. Y. 66; People v. McKinney, 52 N. Y. 378), set at naught. This was first clearly stated by Judge Bronson in Warner v. People, 2 Denio, 272, 43 Am. Dec. 740, in respect of a similar provision in the constitution of 1821 concerning county clerks and sheriffs, viz.:

"I do not doubt that the legislature can regulate the duties, and reduce or take away the fees of the officer, and it may perhaps abolish the office. But so long as the duties and emoluments of the office remain, the choice of the officer belongs to the electors of the county. They cannot be deprived of their right by changing the name of the office, nor by dividing it into parts, and transferring the selection of one of the officers to another body. If the office may be divided, and the duties be assigned to two officers,, both must be chosen by the electors of the county. No other rule will give full effect to the constitution."

The same was stated with precision in respect of the constitutional provision now under consideration by the two learned judges who wrote in People v. Raymond, 37 N. Y. 428. Judge Grover there said:

"The plain intention of the section of the constitution in question was to preserve to localities the control of the official functions of which they were then possessed; and this control was carefully preserved consistent with the power of the legislature to make needful changes by restricting the power of appointment of other officers to perform the same functions to the people or some authority of the locality."

And Chief Judge Hunt said:

"In effect the legislature here divided the duties of assessors, as they existed in 1846, and have given an important part of them to commissioners of taxes and assessments. The assessors are elected by the city and county authorities, or divisions of them; and under Const. 1894, art. 10, § 2, these commissioners must be elected in the same manner. The present law is in violation of this principle."

And in People v. Albertson, 55 N. Y. 50, the same is again said so plainly as to leave no doubt, viz.:

"The constitution cannot be evaded by a change in the name of an office, nor can an office be divided and the duties assigned to two or more officers under different names, and the appointment to the offices made in any manner except as authorized by the constitution."

It is not enough to create a new "officer," or change the name of the office or officer, but the "office" must be new, i. e., the duties constituting it must be new, in order that the election or appointment of such officer in the said prescribed manner may be departed from, as is tersely summed up in a sentence in People v. Pinckney, 32 N. Y. 386, viz.:

"The test, therefore, must be whether the functions conferred are substantially new in the sense that they were not exercised by public civil officers at the time the constitution was adopted."

That the true construction of the said constitutional provision is that it covers and protects the local official duties and functions existing in local public officers at the time of its adoption from being transferred to officers not elected or appointed in the prescribed manner, is attested by an unbroken line of decisions.   Warner v. People, 2 Denio, 272, 43 Am. Dec. 740; People v. Pinckney, 32 N. Y. 377; Devoy v. Mayor, etc., 36 N. Y. 449; People v. Raymond, 37 N. Y. 428; Board v. Heister, 37 N. Y. 666; People v. McKinney, 52 N. Y. 374; People v. Crooks, 53 N. Y. 648; People v. Albertson, 55 N. Y. 50; People v. Keeler, 29 Hun, 175; People v. Terry, 108 N. Y. 1, 14 N. E. 815; Rathbone v. Wirth, 150 N. Y. 459, 45 N. E. 15, 34 L. R. A. 408; People v. Howland, 155 N. Y. 270, 49 N. E. 775, 41 L. R. A. 838.

4. But it is suggested that such constitutional provision must be construed and applied as of the time of its first adoption, viz., in the constitution of 1846, which would bring the said office of commissioner of jurors under the head therein of "officers whose offices may hereafter be created," for it was not created until 1858, as we have seen.

(a). This suggestion arises upon the assumption that the legislature was left free by the words of the said constitutional provision to provide for the election or appointment of new county, town, city or village officers in any manner it saw fit.   It is difficult to see how such meaning is to be got therefrom, although there is seemingly a dictum for it in the Draper Case, 15 N. Y. 532, which has been repeated in other cases where, also, the question was not up at all.   People v. Draper, 15 N. Y. 532; People v. Pinckney, 32 N. Y. 377; Sturgis v. Spofford, 45 N. Y. 446; Fire Dept. of New York v. Atlas S. S. Co., 106 N. Y. 566, 13 N. E. 329.   And on closely reading the opinion in People v. Palmer, 52 N. Y. 83, it is not altogether clear that it was not so restricted as to exclude the point.   In the Draper Case nothing was before the court and actually decided except (1) that the legislature had power to establish new civil divisions of the state other than those provided for by the constitution, and (2) provide that the offices of such new divisions should be filled by appointment of the governor and senate.   Board v. Heister, 37 N. Y. 667.   Such offices being neither county, town, city nor village offices, the said requirement of the constitution in respect of the filling of the latter, was plainly not applicable to them. But the court did not hold that new county, town, city or village offices could be filled by appointment of state officers, any more than by election by the electors of the whole state.

The main provision is for the election of "existing" local officers by the local electors, or else for their appointment by local officials, "as the legislature shall direct"; i. e., the legislature may direct which.   The final sentence, that all other officers whose election or appointment is not provided for in the constitution, and all officers "whose offices may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct," seems not only by society and identity of words and unity of intention, but literally, to follow the same meaning in respect of after created

71 N.Y.S.—4

county, town, city or village offices; i. e., "the legislature may direct" whether they shall be elective or appointive; but when that choice is made by the legislature, the "manner" of the election or appointment must be that previously prescribed, i. e., by the local electors or by local officials. If this be not so, then the legislature may as to such offices prescribe the manner of the election or of the appointment without restriction; and if this be so then it may prescribe election by the electors of some other political or corporate subdivision, or of the whole state, or appointment by officials of such other subdivision, or of the state; for if it be said that the words used leave the manner of appointment unrestricted, it must be said that they leave the manner of election unrestricted also; they are one sentence and make no distinction. It does not seem that such a meaning can be attributed to the framers of the constitution, for it would be out of harmony with the whole system and framework of state and local government which it was their purpose to establish.

(b). But however this may be, the construction of such provision as of the time of its adoption in 1846, instead of in 1894, is not permissible. The settled rule of construction is to the contrary, i. e., that the word "hereafter" must be taken to speak from the adoption of the constitution of 1894, which is not an amendment of the constitution of 1846, but a complete new constitution. This has always been the rule declared by statute for the construction of the words "hereafter" and "heretofore" in respect of our successive revisions and codifications of statutes (2 Rev. St. p. 778, § 10; Code Civ. Proc. § 3343, subd. 22; Stat. Constr. Law, § 9); and the same rule applies to the constitution. People v. Potter, 47 N. Y. 379; Wynehamer v. People, 13 N. Y. 427; Riggs v. Shannon, 27 Abb. N. C. 456, 16 N. Y. Supp. 939, note; Rathbone v. Wirth, 6 App. Div. 311; Id., 150 N. Y. pp. 473, 482, 45 N. E. 15, 34 L. R. A. 408. In the first of these cases it was said that "the same rules apply to the construction of a constitution as to that of a statute law"; and also as follows: "A constitution is to be held as prepared and adopted in reference to existing statutory laws upon the provisions of which in detail it must depend to be set in operation;" and the same thing is said in People v. Rathbone, 145 N. Y. 438, 40 N. E. 395, 28 L. R. A. 384. In the Wynehamer Case the provision of the constitution of 1846, "that trial by jury in all cases in which it has been heretofore used shall remain inviolate forever," was under construction. The case in which trial by jury was there claimed was one in which the right existed by statute when the constitution of 1846 was adopted, but did not exist when the first constitution, i. e., that of 1777, which contained the same provision, was adopted. It was therefore argued that the word "heretofore" had to be referred back to the constitution of 1777, to which Judge Johnson said: "Writings are to be construed as to the time when they are made, and 'heretofore' in this clause means before 1846, and cannot, to limit its meaning, be carried back to 1777, and confined to the cases which, at that earlier period, were triable by jury;" and this was followed by the court.

5. But if such interpretation as of the date of 1846 were permissible, the result here would be the same, for, as we have seen, the constitutional provision covered the official duties of making up the county jury lists and drawing jurors. The learned and able men, now passed from among us, who drew the said act of 1858 creating a commissioner of jurors in this county, and transferring to him from the county clerk the said duties, well understood that the said provision in the constitution of 1846 covered such duties, for the reason that they existed in the office of county clerk at the time such constitution was adopted. They were therefore careful to have such act provide that the new officer should be appointed by county officials. They knew that such duties could not be taken out of the protection of such constitutional provision, and transferred to a new officer not elected by the electors of the county or appointed by some county official or officials as therein prescribed. There may be duties so inherent by ancient lineage in certain officers made elective by the constitution, that they could not be transferred to another officer at all, or, at all events, to one not also elective (People v. Keeler, 29 Hun, 175; State v. Brunst, 26 Wis. 414, 7 Am. Rep. 84; People v. Howland, 155 N. Y. 270, 49 N. E. 775, 41 L. R. A. 838), but the duties of selecting and summoning jurors are not of that unique character. As a rule the constitutional requirement under consideration is satisfied if the duties be kept with an officer either elected or appointed in the prescribed manner; they may be transferred from an appointive to an elective officer, and vice versa.

6. The point that the petitioner has not filed an official bond is not in the record; and if it were it is only technical and should be waived; or he may file it nunc pro tunc if he is required to file a bond by law and has not done so.

The stay is granted.