No. 15,009.

BERKENS *v.* DENVER COCA-COLA BOTTLING COMPANY.
(122 P. [2d] 884)

Decided February 9, 1942.   Rehearing denied March 2, 1942.

Mr. Louis E. Gelt, Mr. Albert T. Frantz, for plaintiff in error.

Mr. Ivor O. Wingren, Mr. Earle F. Wingren, for defendant in error.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

This action was instituted in the district court of the City and County of Denver to recover damages for personal injuries. Plaintiff in his complaint alleged that in June, 1940, he purchased from defendant a number of bottles of coca-cola which he placed in a portable refrigerator; that he later took one of the bottles therefrom, and while attempting to open it for a customer by removing the cap with a bottle opener, the bottle exploded throwing a piece of glass violently against the middle finger of his right hand, causing the injury of which complaint is made; that said injury was the proximate result of the negligence of defendant in bottling the contained beverage under excessive gas pressure, rendering the bottles containing it dangerous to handle; that defendant sent plaintiff to its physician for care and attention and paid his hospital bills incurred in connection therewith. Defendant, in its answer, ad-

mits this latter allegation.

On the day of the trial and after a jury had been selected, impaneled and sworn, plaintiff moved for an order, "that the court submit to the jury the sole question of the measure of damages and nothing else." The motion was overruled. Thereafter, at the close of plaintiff's case, a motion for nonsuit, interposed by defendant, was granted, and concurrently therewith judgment of dismissal was duly entered.

Plaintiff presents the case here for review by writ of error, asking that the writ be made a supersedeas and operate accordingly. In compliance with his formal request, we have elected to finally determine the cause on the supersedeas application.

The record discloses that at the time of the accident plaintiff was twenty-three years old; that on June 15, 1940, and for some time prior thereto, he was engaged in retailing coca-cola and other cold soft drinks, sandwiches, ice cream, candy and similar products by peddling them from his truck in a certain downtown district in Denver; that he bought his coca-cola from defendant, getting his other supplies elsewhere; that this business netted him an average of about $3.50 per day; that about 9 a.m. June 14, 1940, he purchased two cases of coca-cola from defendant, each case containing twenty-four bottles; that he sold three-fourths of this supply on that day and took the unsold dozen bottles to his home; that the next day, June 15, at about 1:30 p.m., he started on his rounds with these and his other supplies, and about 3 p.m. having a customer for coca-cola, he removed a bottle from his truck and started to open it in the usual manner, holding the bottle in his left hand and applying a bottle opener to the cap with even pressure of his right hand, when a noise — described by plaintiff as a "pop" — occurred and the upper portion of the neck of the bottle with the cap still attached broke off and hit the middle finger of his right hand, injuring it severely and causing considerable hemorrhage. The fragment of

bottle was later picked up three or four feet away, to the right of plaintiff. After his customer had put a temporary bandage on the injured finger, plaintiff jumped into his car and drove to the place of business of defendant where its plant foreman looked at the finger and then sent him to a Dr. Gillen. Dr. Gillen was not at home at the time and his secretary sent plaintiff to a hospital where Dr. Casey treated the wound by applying a local anaesthetic, taking a few stitches and placing the finger in a splint. The same afternoon, after this treatment plaintiff made a few collections and sold a few sandwiches, but, as he testified, he was not able to use the injured hand for about three weeks thereafter.

Plaintiff testified that he had a refrigerator in the bottom of his truck consisting of a large, heavy, galvanized wash tub about one foot deep and thirty inches wide in which cracked ice was placed for the purpose of cooling the beverages. The bottles were placed upright and kept fairly snug, replacement being made whenever withdrawals amounted to eight or ten bottles. He further testified that the particular dozen coca-cola bottles from which the one, the subject of this suit, was taken were allowed to remain in their original case until about 1:30 p.m. June 15th, at which time he took them out of the case and placed them in the refrigerator in his truck; that he had about forty bottles in this receptacle, which contained no separators, and that the bottles simply stood beside each other; that when he drove around in his car they would rub together; that he had travelled about a mile when he came to the place where he sold the bottle in question; that June 15th was a warm day, the temperature being between seventy-five and eighty degrees; that the bottle of coca-cola which he produced for sale at 3 p.m. and which broke when he endeavored to open it, was ice-cold when he removed it from the refrigerator; that the bottle opener which he used was one of a type of "which he had not seen very many"; that the "pop" occurring at the time the

top of the bottle broke off was "about as loud a noise as a warm bottle of beer would make"; that he had handled the individual bottle just twice—first, when he removed it from the case in which he had purchased it and placed it in the refrigerator, and second, when he took it out of the refrigerator to sell it to the customer; that the cap attached to the upper portion of the bottle in question revealed a dent where the bottle opener came in contact with it under the pressure which he applied.

█ Of the ten specifications of points presented by plaintiff, we deem it necessary to consider only two: First, that the trial court committed error in not granting his motion to submit to the jury the sole question of damages; second, that it erred in granting defendant's motion for nonsuit at the close of plaintiff's case. As to the first, counsel for plaintiff argue that defendant acknowledged liability when, by its answer, it admitted that it had paid both doctor and hospital bills incurred in the treatment of plaintiff's injury. The Colorado cases cited in support of this argument we do not consider pertinent. In addition to the Colorado authorities, plaintiff cites in his opening brief ten cases from states other than Colorado, and in his reply brief calls attention to two additional cases, *Sullivan v. Heyer,* 300 Ill. App. 599, 21 N.E. (2d) 776, and *Jasman v. Meaney,* 250 Mass. 576, 146 N.E. 257. The latter case simply reaffirms the doctrine laid down in the two other Massachusetts cases cited in plaintiff's original brief, *Dennison v. Swerdlove,* 250 Mass. 507, 146 N.E. 27, and *Wiseman v. Rome,* 250 Mass. 505, 146 N.E. 28. In all of those cases, except the Sullivan-Heyer case, there had been either verbal conversations between plaintiff and defendant, or written communications by the latter, which the court, in each case held might have some value as evidence of admission of liability on the part of defendant; therefore evidence of these various verbal conversations or written communications might properly have been submitted to

the jury. Plaintiff in the instant case now seeks to use these cases as authority supporting absolute admission of liability and for submitting to the jury only the question of damages. This position we believe to be untenable.

Even in *Sullivan v. Heyer, supra,* an automobile accident case where there was evidence that the motorist paid the injured guest's hospital bill, the court held, not as contended by plaintiff in the instant case that the payment was an absolute admission of liability, but that it was evidence which was improperly excluded from the consideration of the jury, which might have construed it as supporting the contention of admission of liability. In our judgment even this case negatives the idea that the only question for the jury in the instant case was the question of damages. Here there is no evidence of any statements on the part of any agent of defendant which tends in any way to admit liability on its part. In fact the direct examination of the plaintiff does not disclose that he communicated to any of defendant's agents that the accident was caused by a bottle containing a product of defendant rather than by one from some other dealer, and even under cross-examination he did not state in so many words that he told defendant's agents that the accident occurred as a result of the breakage of one of its bottles. In the state of the record it may be questionable whether at the time defendant's agents gave help to plaintiff they knew that the accident might have resulted from any alleged negligence attributable to it.

■ The remaining question is whether the trial judge properly granted defendant's motion for a nonsuit at the conclusion of plaintiff's case. It is apparent from the record and from the briefs of both sides that, inasmuch as the plaintiff's evidence did not show any direct negligence on the part of the defendant, he must rely upon the doctrine of res ipsa loquitur to justify a recovery.

In the case of *Clune v. Mercereau*, 89 Colo. 227 (1 P. [2d] 101), appears the following: "The rule of 'res ipsa loquitur' is a rule of evidence only. It takes more than the mere happening of an accident to set the rule in operation. It must be shown that the act was of such a character as, in the light of ordinary experience, it is without explanation except on the theory of negligence. 8 Thompson on Negligence (White's Supl.) §7635." In that case we held the rule not applicable in an automobile accident case where the happening was just as reasonably attributable to causes other than negligence. So in the instant case we are of the opinion that the rule is not applicable because it appears from the evidence that the accident is just as reasonably attributable to causes other than that of negligence of the defendant.

We have examined the cases cited by the plaintiff. The facts in most of them are clearly different from those in the instant case. The authorities as to the application of the doctrine of res ipsa loquitur are conflicting, but we believe that those cited by plaintiff as most favorable to his contention present a situation different from that appearing in the instant case, and that no case cited by his counsel would support an application of the res ipsa loquitur doctrine under the facts disclosed in this proceeding.

Judgment affirmed.

MR. JUSTICE HILLIARD dissents.