# HELEN JOHNSON v. COCA COLA BOTTLING COMPANY OF WILLMAR, INC.[1]

January 25, 1952.

No. 35,437.

*Frank J. Murray, Helena C. Murray, John M. Prins, William H. DeParcq,* and *Donald T. Barbeau,* for appellant.

*Sexton, Tyrrell & Jardine,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for judgment notwithstanding the verdict or a new trial.

Plaintiff was employed by the village of Clara City in its municipal liquor store. Defendant is a bottling company which sold and delivered Coca Cola to the store usually about twice a week. De-

[1]Reported in 51 N. W. (2d) 573.

liveries of the product were made by defendant to the liquor store on May 21 and May 24, 1949. It was the custom of defendant, sole supplier of the beverage to the store, to place it in the basement of the place of business, where the cases were piled in stacks by defendant's deliverymen. They were taken from there to the cooler, when needed, by bartenders employed by the store.

On May 26, 1949, about four o'clock in the afternoon, a customer of the store ordered a bottle of Coca Cola from plaintiff, who was acting as a waitress in the place. She went to a cooler in the store to get the beverage. She testified that she stooped down, opened the door of the cooler, and reached in with her right hand for a bottle of the beverage which was on the shelf. As she reached for the bottle, it exploded with a noise which she described as a "definite explosion * * * quite loud," and which a patron on the premises at the time described as similar to the noise caused by the bursting of a paper bag. Plaintiff's hand was injured.

It appears from the record that Lawrence P. Freisleben, one of the four bartenders employed by the store, had placed additional bottles of Coca Cola in the cooler at approximately one o'clock on the same afternoon and that he and the other bartenders employed by the store were the only ones who supplied the cooler with Coca Cola from time to time. Freisleben testified that he went to the basement of the store on that day, took in his two hands the top case from a stack of Coca Cola cases which stood about three and one-half feet from the foot of the basement stairway, turned around, walked up the steps with it, set it on a shelf in front of the cooler, and proceeded to remove the bottles from the case and place them in the cooler. He said that the cooler was not completely empty at the time he did this, but that there were a few bottles left, which he placed on the back bar while he put in the bottles from the case; that the bottles were taken out of the case one by one and laid in the cooler on a wooden lattice shelf; that he placed eight or nine bottles along the rack and approximately three rows on top of that; and that the top two rows tapered off somewhat. He then put into the cooler the bottles he had placed on the back bar and stood them

up in front. He testified that he did not bump the cases on or against anything, and that he did not strike the bottles on anything in taking the case from the basement and depositing the bottles in the cooler.

Other employes, who at times filled the cooler and carried cases of the product from the stacks in the basement, testified that they used the same method of transporting the product and placing the individual bottles in the cooler, and that neither cases nor bottles received any bumps nor struck any hard objects while in the hands of these employes. The cooler in which the bottles were placed was an electric refrigerator about six feet long, three feet wide, and 18 inches deep, with three compartments, each with a separate door. The Coca Cola was stored in a compartment separate from the other beverages. The cooler was kept at a temperature of 40 degrees and had an automatic control and a small built-in fan, which was used for circulating the air throughout the inside. There was testimony that the basement from which the case of Coca Cola was brought always had a temperature of 65 to 70 degrees; that there were no windows admitting direct sunlight into the basement; that there were no radiators in the basement; that the furnace was 20 feet from the place where the Coca Cola was stacked; that no heat was thrown in the general direction of the Coca Cola cases; and that the temperature on May 26, 1949, was as usual. There was also testimony with reference to the distributing process used by the bottling company, the manufacturing and bottling process, inspection, piling, storage, and handling.

The only question we need consider for a determination of this case is whether the trial court erred in denying plaintiff's request to charge the jury that the doctrine of *res ipsa loquitur* was applicable.

The application or nonapplication of the doctrine of *res ipsa loquitur* in connection with exploding bottle and food container cases in this country appears to be divided into three broad general holdings, as follows:

(1) That the doctrine may not be applied in situations where the bottle itself has passed out of the control of the defendant (generally the bottler).

(2) That the doctrine may be applied on the theory that the defendant (bottler) had control of the instrumentality (or bottle) causing the injury at the time of the alleged negligent act, although not at the time of the accident, *provided* that plaintiff shall first prove that the condition of the instrumentality had not been changed after it left defendant's possession and that plaintiff himself was not responsible for the accident.

(3) That the doctrine may be applied when there is a showing of similar explosions or the explosion of more than one bottle of defendant's product at times reasonably proximate to that of the accident in question. For example, in Dail v. Taylor, 151 N. C. 284, 66 S. E. 135, 28 L.R.A.(N.S.) 949, it was held that the mere explosion of one bottle of Coca Cola, which resulted in an injury, was insufficient to carry the case to the jury under the doctrine of *res ipsa loquitur*. See, also, Stone v. Van Noy R. News Co. 153 Ky. 240, 154 S. W. 1092, and cases cited in Annotation, 4 A. L. R. (2d) 466, *et seq.*, on the three general holdings referred to above.

′ For varying reasons explained in the following cases, some courts have refused to apply the *res ipsa loquitur* doctrine in cases involving exploding bottles of carbonated beverages. Gerber v. Faber, 54 Cal. App. (2d) 674, 129 P. (2d) 485; Loebig's Guardian v. Coca-Cola Bottling Co. 259 Ky. 124, 81 S. W. (2d) 910; Stewart v. Crystal Coca-Cola Bottling Co. 50 Ariz. 60, 68 P. (2d) 952; Glaser v. Seitz, 35 Misc. 341, 71 N. Y. S. 942; Luciano v. John Morgan, Inc. 267 App. Div. 785, 45 N. Y. S. (2d) 502; Winfree v. Coca-Cola Bottling Works, 19 Tenn. App. 144, 83 S. W. (2d) 903; Naumann v. Wehle Brg. Co. 127 Conn. 44, 15 A. (2d) 181; Alagood v. Coca Cola Bottling Co. (Tex. Civ. App.) 135 S. W. (2d) 1056; Curley v. Ruppert, 272 App. Div. 441, 71 N. Y. S. (2d) 578; cf. Berkens v. Denver Coca-Cola Bottling Co. 109 Colo. 140, 122 P. (2d) 884; Ruffin v. Coca Cola Bottling Co. 311 Mass. 514, 42 N. E. (2d) 259; Slack v. Premier-Pabst Corp. 40 Del. (1 Terry) 97, 5 A. (2d) 516; Wheeler

v. Laurel Bottling Works, 111 Miss. 442, 71 So. 743, L. R. A. 1916E, 1074; Seven-Up Bottling Co. Inc. v. Gretes, 182 Va. 138, 27 S. E. (2d) 925; Dail v. Taylor, 151 N. C. 284, 66 S. E. 135, 28 L.R.A.(N.S.) 949.

On the other hand, many jurisdictions have applied the doctrine for reasons set out in the following cases in connection with exploding bottles. Payne v. Rome Coca-Cola Bottling Co. 10 Ga. App. 762, 73 S. E. 1087; Stolle v. Anheuser-Busch, Inc. 307 Mo. 520, 271 S. W. 497, 39 A. L. R. 1001; Bradley v. Conway Springs Bottling Co. 154 Kan. 282, 118 P. (2d) 601; Ortego v. Nehi Bottling Works, 199 La. 599, 6 So. (2d) 677; MacPherson v. Canada Dry Ginger Ale, Inc. 129 N. J. L. 365, 29 A. (2d) 868; Macres v. Coca-Cola Bottling Co. Inc. 290 Mich. 567, 287 N. W. 922; Benkendorfer v. Garrett (Tex. Civ. App.) 143 S. W. (2d) 1020; Macon Coca-Cola Bottling Co. v. Crane, 55 Ga. App. 573, 190 S. E. 879; Cole v. Pepsi-Cola Bottling Co. 65 Ga. App. 204, 15 S. E. (2d) 543; Honea v. Coca Cola Bottling Co. 143 Tex. 272, 183 S. W. (2d) 968, 160 A. L. R. 1445; Joly v. Coca-Cola Bottling Co. 115 Vt. 174, 55 A. (2d) 181; Hoffing v. Coca-Cola Bottling Co. 87 Cal. App. (2d) 371, 197 P. (2d) 56; Gordon v. Aztec Brg. Co. (Cal. App.) 196 P. (2d) 38; Escola v. Coca Cola Bottling Co. 24 Cal. (2d) 453, 150 P. (2d) 436; Brunskill v. Farabi (Mo. App.) 181 S. W. (2d) 549; Auzenne v. Gulf Pub. Serv. Co. (La. App.) 181 So. 54; Lanza v. De Ridder Coca Cola Bottling Co. (La. App.) 3 So. (2d) 217; Canada Dry Ginger Ale Co. Inc. v. Jochum (D. C.) (Mun. App.) 43 A. (2d) 42.

While a detailed discussion of the reasoning used for and against the application of the doctrine of *res ipsa loquitur* in the cases cited above would be interesting, space will not permit it, and it would serve no useful purpose, since the principal question for determination here is whether the trial court should have granted plaintiff's requested instruction as to the applicability of the doctrine under the facts and circumstances of the instant case.

We are considering here, primarily, the applicability of the rule in connection with bottled-beverage and foot-container cases, particularly carbonated beverages. This general subject is treated in

Annotation, 4 A. L. R. (2d) 466, *et seq.* The annotation is concerned principally with the question of whether, upon an injury from the bursting of a bottle or container of food or drink, a presumption or inference of negligence arises from the happening; in other words, whether the doctrine may be invoked.

In this state, the *res ipsa loquitur* doctrine rests upon inference and not on presumption. Risberg v. D. M. & I. R. Ry. Co. 233 Minn. 396, 47 N. W. (2d) 113. See, also, 4 Dunnell, Dig. & Supp. § 7044, for a collection of Minnesota cases.

Speaking further with reference to the rule, this court said in Heffter v. Northern States Power Co. 173 Minn. 215, 217, 217 N. W. 102, 103, cited with approval in Risberg v. D. M. & I. R. Ry. Co. *supra:*

"* * * It is not the accident but the circumstances that justify the application of the doctrine. * * * The inference which the doctrine permits is grounded upon the fact that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to defendant but inaccessible to the injured person. * * * It may happen that a plaintiff makes a prima facie case by showing the accident with its attendant circumstances and yet he may destroy by his own evidence the application of the doctrine."

Three requirements for the application of the doctrine under our decisions do not differ from those stated by Professor Prosser in 20 Minn. L. Rev. 241, as suggested by Dean Wigmore in 5 Wigmore, Evidence (2 ed.) § 2509, p. 498. See, 9 *Id.* (3 ed.) § 2509, p. 391. They are as follows: (1) Plaintiff must have been injured by an apparatus or instrumentality whose nature is such that injury is not ordinarily to be expected in the absence of negligence; (2) at the time of the injury, both inspection and user must have been in the exclusive control of the defendant; and (3) the injurious condition or occurrence must not have been due to any voluntary action on the part of plaintiff. Risberg v. D. M. & I. R. Ry. Co. *supra.*

In connection with the three requirements above referred to, Professor Prosser then goes on to say (20 Minn. L. Rev. 242):

"* * * The circumstances must be such as to give rise to an inference that someone has been negligent, and the defendant's control of the situation must be such that the inference will point to the defendant."

Professor Prosser further explains that the mere occurrence of the accident alone is never sufficient, in the absence of these attendant circumstances, to establish a *res ipsa loquitur* case, since the accident in itself creates no reasonable inference of the defendant's negligence. See, also, 38 Am. Jur., Negligence, § 295, *et seq.* In Prosser, Torts, § 43, p. 300, the author also states:

"Allied to the condition of exclusive control in the defendant is that of absence of any action on the part of the plaintiff contributing to the accident."

Defendant argues that the breaking of a single bottle of Coca Cola does not permit an inference that it broke because of someone's negligence, and that defendant did not have control of the instrumentality causing the injury at the time of the accident. It further argues that there is no substantial evidence that it had control at the time of any negligent act or omission which might have been productive of the injury.

Plaintiff relies on Peterson v. Minnesota Power & Light Co. 207 Minn. 387, 390, 291 N. W. 705, 707. This court there said that one essential prerequisite to the application of the *res ipsa loquitur* doctrine is that the defendant must have been in exclusive control of the instrumentality causing the harm. In explaining control, the court said, quoting from 3 Cooley, Torts (4 ed.) § 480, p. 386, that it "is not necessarily a control exercised at the time of the injury, but may be one exercised at the time of the negligent act which subsequently resulted in an injury." The court explained that this is necessarily so because of the fact that in many instances the defendant's failure to meet the standard of a reasonable man will not manifest itself until a subsequent period, as, for example, where a foreign substance is negligently permitted to get into a beverage bottled by a defendant bottler. In that case, plaintiffs, husband and

wife, sued for damages suffered by both parties from injuries inflicted upon the wife by the alleged negligence of defendant power company arising out of the installation by defendant of an electric kitchen stove in plaintiffs' home. The installation was made pursuant to an agreement which appeared to be in the form of an ordinary conditional sales contract, except that it provided that if the stove was not satisfactory the purchaser could return it to the power company by a certain date. The stove was installed on October 3, 1938. On October 18 Mrs. Peterson went to the stove to remove some rolls which she was baking. While in the act of opening the oven door with one hand and turning off the oven switch with the other, a charge of electricity flared before her face and injured her. At the trial, plaintiffs relied on the *res ipsa loquitur* doctrine. Testimony was introduced from which a jury could find that neither the plaintiffs nor anyone else except defendant's workmen touched the mechanism of the stove or used it in any other manner than that for which it was intended. Defendant introduced no evidence on this aspect of the case. The trial court applied the *res ipsa loquitur* rule. Plaintiffs relied upon the proposition that from the event two inferences were permissible: (1) That the flash was caused by defendant negligently permitting an excessive amount of electricity to enter the stove; and (2) that the stove was defective because of the negligence of defendant. Upon appeal, this court said that the jury could find that ordinarily electric stoves do not emit flashes of the character experienced by Mrs. Peterson; that it could be inferred from the event, standing alone, that the flash was caused by an excessive amount of current entering the stove from defendant's wires; that defendant had exclusive control of the current and wires; and that the jury could reasonably conclude that it must have been defendant who negligently permitted the current to enter in an excessive amount. The court then went on to say, as stated above, that an essential prerequisite to the application of *res ipsa loquitur* is that the defendant have exclusive control of the instrumentality causing the harm; that control is not necessarily a control exercised at the time of the injury, but could be one exer-

cised at the time of the negligent act which subsequently resulted in the injury. The court stated that it was not unmindful of the fact that *res ipsa loquitur* cannot apply where there is a divided control, and acknowledged that the situation there presented a borderline case, but concluded that there was sufficient control over the mechanism of the stove by defendant to justify application of the rule.

The theory appearing in some of the exploding-bottle cases cited above, where the *res ipsa loquitur* doctrine was applied, is also to the effect that the control required over the article causing the injury does not necessarily refer to control at the time of the injury, but to control at the time of the alleged negligent act. In those cases, however, such theory does not seem to dispense with the necessity of plaintiff's introduction of affirmative evidence to combat the possibility of negligence on his part or that of intermediaries.

One of the cases cited by plaintiff in which the doctrine was applied is Escola v. Coca Cola Bottling Co. 24 Cal. (2d) 453, 150 P. (2d) 436. The fact situation in that case was similar in many respects to that in the case at bar, except that there the waitress employed in the restaurant was injured when a bottle of Coca Cola exploded in her hand while she was taking the bottles, one by one, from a case and placing them in a refrigerator. Defendant's driver delivered several cases of the beverage to the restaurant, where they remained for about 36 hours before plaintiff attempted to transfer the bottles from the cases to the refrigerator. In the case at bar, there is some uncertainty as to just when the bottle which exploded was delivered to the liquor store, although it is undisputed that deliveries were made on May 21 and 24 prior to the accident. The court said in the Escola case that the doctrine did not apply unless defendant had exclusive control of the thing causing the injury and that the accident was of such a nature that it ordinarily would not occur in the absence of negligence by the defendant. Recognizing that many authorities were to the effect that the happening of the accident did not speak for itself when it took place some time after the defendant had relinquished control of the instrumentality caus-

ing the injury, the court then went on to say (24 Cal. [2d] 458, 150 P. [2d] 438) :

"* * * Under the more logical view, however, the doctrine may be applied upon the theory that defendant had control at the time of the alleged negligent act, although not at the time of the accident, *provided* plaintiff first proves that the condition of the instrumentality had not been changed after it left the defendant's possession. (See cases collected in Honea v. City Dairy, Inc., 22 Cal. 2d 614, 617-618 [140 P. 2d 369].) * * * Plaintiff must also prove that she handled the bottle carefully."

This decision was followed and approved in Gordon v. Aztec Brg. Co. (Cal. App.) 196 P. (2d) 38, where plaintiff was injured by the explosion of a bottle of beer.

In Hoffing v. Coca-Cola Bottling Co. 87 Cal. App. (2d) 371, 197 P. (2d) 56, a store employe was injured by the explosion of a bottle of Coca Cola as he was carrying it to a customer from the case in which it was delivered by the bottler two days before. There was evidence that the bottle had remained stored in a small room at the rear of the store and that plaintiff had used due care in handling it so that it did not strike or hit anything. See, also, Joly v. Coca-Cola Bottling Co. 115 Vt. 174, 55 A. (2d) 181; Bradley v. Conway Springs Bottling Co. 154 Kan. 282, 118 P. (2d) 601; Benkendorfer v. Garrett (Tex. Civ. App.) 143 S. W. (2d) 1020, where injuries resulted to the plaintiff in each case when a bottle of carbonated beverage broke while being put in the refrigerator.

In line with this point, it was held in Honea v. Coca Cola Bottling Co. 143 Tex. 272, 183 S. W. (2d) 968, 160 A. L. R. 1445, that the jury was entitled to hear evidence as to whether there was any unusual handling of the bottle, where the employe of a store was injured by the explosion of a bottle of Coca Cola as he grasped several bottles in the case by the neck, pressing them together in order to lift the case, since the rule of *res ipsa loquitur,* being a rule of evidence, requires the thing causing the injury to be under the control and management of the wrongdoer. However, it was held in that case that under an extension of the rule it may apply to a

manufacturer if the injured person can show that the bottle was handled with ordinary care from the time it left the manufacturer's hands and that its condition had not undergone any change by the intervention of others.

In the case before us, there is no reason to assume from plaintiff's testimony that her actions were such as to make her responsible for the accident. She testified that in response to a request from a customer for a bottle of Coca Cola she went to the cooler, opened the door, reached in for a bottle of the beverage, and that as she did so the bottle exploded and injured her hand. There is also testimony from the bartender who placed the bottles in the cooler that in removing the bottles from the case which he took from the basement a few hours before the accident he did nothing to the case or bottles which would cause the bottles to strike against anything or against each other. His testimony was corroborated by other employes of the store, who also handled similar cases and bottles, to the effect that in handling the product they used the same method of transporting the cases and placing the bottles in the cooler without bumping or striking the cases or bottles against any hard object or striking the bottles against each other. There was also testimony to the effect that the cases or bottles were not subjected to any unusual temperatures for which they were not intended while in the basement of the store or after the bottles were placed in the cooler.

Plaintiff requested the following instruction, which was refused:

"The doctrine of res ipsa loquitur applies to this case, which means that the accident itself and the surrounding circumstances may afford sufficient evidence of negligence to permit and allow you to draw such an inference unless you find there has been a satisfactory explanation of the occurrence by the defendant. You are instructed under this doctrine that if you find from the greater weight or preponderance of the evidence that the defendant had exclusive control of the instrumentality causing the harm which the plaintiff claims here was caused, and if you further find that the accident claimed is of the type or kind that ordinarily would

not have occurred had those having such control of the instrumentality exercised the proper care, then you may infer from the accident and the surrounding circumstances that there was negligence on the part of the defendant, unless the defendant has offered a satisfactory explanation of the occurrence. The control which would warrant you in drawing an inference of negligence need not necessarily be control at the time of the accident, but may be control at the time of the negligent act or omission, if any, which subsequently resulted in an injury. The control that the defendant exercised would carry over to the time of the occurrence if the instrumentality causing the harm were not improperly used, touched or interfered with and used only in the normal manner in which it is intended by the defendant it is to be used."

She contends that this instruction was within the law of Peterson v. Minnesota Power & Light Co. 207 Minn. 387, 291 N. W. 705, *supra.* She further argues that the trial court, by instructing the jury as in an ordinary case of negligence not governed by the *res ipsa* maxim, negatived the effect of the doctrine and failed to give plaintiff the express benefit of the principle. The particular parts of the instruction given by the trial court which plaintiff contends were erroneous were to the effect that negligence is not presumed; that the mere fact that the bottle burst was not in itself evidence of negligence, but must only be taken into consideration in connection with all other facts and circumstances in the case to determine whether defendant was negligent; and that the issue of negligence was to be determined from all the evidence in the case and all the inferences which the jury could reasonably draw from the evidence presented to it. Plaintiff further objects to that part of the court's charge to the effect that if the jury found that there was negligence on the part of defendant it still could not find a verdict for plaintiff unless it is first determined that the negligence of defendant was the proximate cause of the injury which plaintiff sustained. The court defined "proximate cause" and instructed the jury that if it found from the evidence that defendant was negligent, but that prior to the time plaintiff was injured there was negligence on the

part of other persons which intervened and superseded the negligence of defendant, plaintiff could not recover. It is plaintiff's position that under such an instruction a jury would not reason in the way this court intended that it should in adopting the *res ipsa loquitur* rule.

We can well understand the perplexing problem before the trial court in connection with the preparation of its charge in the instant case. It is our opinion, however, after an examination of the record and the charge in its entirety, that plaintiff's requested instruction with reference to the doctrine of *res ipsa loquitur* should have been given under the facts and circumstances here, with the provision that the court should have also pointed out in its instructions that plaintiff must also prove that she handled the bottle carefully and that the injury was not caused by any voluntary action on her part.

We recognize that there seems to be considerable difference among authorities in connection with the application of the *res ipsa loquitur* doctrine in actions for injuries arising from exploding bottles of carbonated and noncarbonated beverages. For example, in Honea v. City Dairy, Inc. 22 Cal. (2d) 614, 140 P. (2d) 369, the rule was not applied. That case involved a noncarbonated beverage, a bottle of chocolate milk, which broke in the hands of plaintiff without any apparent fault on her part. It was held that the rule was not applicable to the unexplained breaking or bursting of a bottle of noncarbonated beverage where the instrumentality causing the injury was not under the control or management of defendant, since it would be a matter of conjecture or surmise as to the cause of the accident, and that, unless the dairy was to be held as an insurer, there would be no liability. See, also, Coralnick v. Abbotts Dairies, Inc. 337 Pa. 344, 11 A. (2d) 143, involving a bottle of milk, and Burnham v. Lincoln, 225 Mass. 408, 114 N. E. 715, involving spring water.

Without attempting to discuss the technicalities involved in the bottling business between carbonated and noncarbonated beverages, we believe that a new trial should be granted in the instant case,

with instructions to apply the doctrine in accordance with this opinion.

Reversed and new trial granted.