# ALA E. JOHNSON v. WEST FARGO MANUFACTURING COMPANY.

95 N. W. (2d) 497.

March 6, 1959—No. 37,503.

*Swensen & Miley* and *Thomas J. Burke,* for appellant.
*Durham, Swanson & Lasley,* for respondent.

MURPHY, JUSTICE.

This is a wrongful death action under M. S. A. 573.02. The plaintiff, as trustee for the decedent, was awarded a verdict. This appeal is taken by the defendant from the trial court's order denying its motion for judgment notwithstanding the verdict or alternatively for a new trial and from the judgment entered for the plaintiff.

The defendant in this case manufactures the Westgo Auger Elevator, an auger-type, portable grain elevator. The decedent, Albert Johnson, was an employee of a purchaser of such an elevator. His death resulted when the elevator in question collapsed, striking him as he stood below it.

A detailed description of the elevator is necessary to an understanding of the facts. Basically, it is composed of two parts: (1) A 52-foot tube which contains the auger to elevate the grain, and (2) the frame on which the tube rests. This frame consists of two sets of arms connected to an axle having two wheels. The two sets of arms form a triangle with the tube as the third side. The axle and wheels are located at the angle opposed to the tube and approximately opposite to the center of the tube. A side view of the elevator would show the tube in a diagonal relation to the ground, the rear or intake end of the tube resting on the ground and the forward or discharge end supported above the ground. One set of arms, designated as reach arms, would be seen to extend from the intake end of the tube to the axle; the second set, designated as lift arms, extending from the axle to the discharge end of the tube. The only two parts of the elevator having contact with the ground are the intake end of the tube and the two wheels.

There is a slide track on the underside of the discharge end of the tube constructed of two parallel pieces of angle iron approximately 12 feet long. This track rests on two rollers which are connected to the end of the lift arm. The reach arms are attached to the tube itself. A steel cable is strung between two pulleys which are attached to the ends of each set of arms. It is anchored to a winch which is located near the intake end of the tube. The cable is used to adjust the height of the discharge end of the tube. Winding up or shortening of the cable pulls on the lift arm causing it to roll on the track toward the lower end of the tube, thus raising the discharge end. Unwinding or lengthening of the cable allows the lift arm to roll forward on the track, thus lowering the discharge end. The cable is the sole support of the tube.

There are two iron "stop hooks" located at the forward or uppermost end of the slide track. These hooks are fabricated from two pieces of strap iron, 1¾ by ¼ inches, and a base plate. The base plate is perpendicular to the tube. The two hooks are an extension of the base. Together with the base plate, they extend for a total perpendicular distance from the tube of 5½ inches. The hooks then bend at a 90-degree angle toward the rear of the tube for 3 inches where they again bend toward the tube at a 45-degree angle for 2 inches.

On August 25, 1956, the decedent and his fellow workers assembled the elevator. After completing it they decided that the cable was not properly installed and, in order to "restring" it, they lowered the lift arm against the stop hooks and allowed the cable to "slack off." Thus the hooks became the sole support of the tube. The decedent was standing on a stool below the tube, working on the cable, when the structure collapsed. The apparent cause of the collapse was the bending of the base plate and the stop hooks under the weight of the tube. A metallurgist, testifying at the trial as an expert witness, said that the hooks would support only about 50 pounds and that they "just plain yielded." The total weight of the tube and auger was 950 pounds, although admittedly the actual weight on the hooks was somewhat less because the intake end of the tube was resting on the ground.

The instructions furnished by the defendant for assembly of the elevator contained no caution against using the stop hooks to support the tube, nor did they advocate such use. An engineer employed by the defendant testified that the hooks were intended to serve two purposes: (1) To show the operator of the winch where the slide track ended, and (2) during transportation the lift arm would be bolted to the base plate to prevent the tube from bouncing off the lift arm rollers.

The suit against the defendant was brought on the theory of negligence in the manufacture of the elevator. The complaint alleged that the defendant should have known that the stop hooks would be used to support the tube and that it was negligent in not constructing them strong enough to accommodate this use. The theory of defense was that the stop hooks were not designed or intended to support the tube and that it was contributory negligence for the decedent to act as he did.

While, as will appear from the discussion to follow, we have determined that there must be a new trial because of prejudicial error occurring in the court's instructions to the jury, the important question to be considered at the outset is whether under the facts a cause of action has been established as to the defendant's negligence and whether the plaintiff was contributorily negligent.

■ This is not the usual type of action in which the negligence of the manufacturer is predicated upon its failure to use material of the quality and strength which would make its product safe for the use for

which it was intended.[1] It should be admitted that the elevator was not defective in the sense that the materials from which it was manufactured were such that they would not serve the purpose intended by the manufacturer. The accident happened as a result of the use of the elevator in a manner not intended by the manufacturer.

The defendant argues that it should have been obvious to decedent from the physical structure of the elevator that the cable was the sole means of support of the arms and tube. They argue that in face of the obvious danger the decedent negligently disengaged the cable and that there was no reason for him to assume that the tube could be supported by the stop hooks.

The plaintiff contends on the other hand that the general appearance and design of the elevator was such as to indicate to the decedent upon examination that the stop hooks were there for the purpose of supporting the tube when the cable was disengaged. He points out that the decedent had no way of knowing that the stop hooks would not support a weight of more than 50 pounds. There is no claim that an inexperienced person could judge their strength from a casual examination. Plaintiff argues that the manufacturer should have anticipated that the elevator would be used in the manner in which the decedent used it and contends that, where the danger involved in the ignorant use of a chattel is great and the manufacturer having special experience or knowledge knows that a foreseeable use involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, the manufacturer is required to inform the user of the risk which it knows but which it has no reason to suppose a user will realize.

There is authority to the effect that under such circumstances the manufacturer is under the duty to apprise the purchasing public either by labels or instructions as to the manner in which the article may be safely used. Restatement, Torts, § 388. On the record before us it may be assumed that in the use of the elevator occasions would arise from time to time when it would be necessary to restring the cable. In that event it would be necessary to find some means to support the beam

---

[1] See cases cited in 13 Dunnell, Dig. (3 ed.) § 6995.

while that operation was being performed. The method of supporting the auger and tube suggested by the witness who testified on behalf of the manufacturer was to maintain it in an elevated position so that "when the tension is released on the cable the thing won't fall down, so you raise the discharge end up in the air with block and tackle or a tractor loader or any means that you have. Some of them lay it up against a building. * * * Then and only then should you release the cable clamps that have secured the cable, and then you can release the cable and restring." That information, however, was not contained in the printed instructions received with the elevator. Whether the decedent in restringing the cable should have in the exercise of ordinary care found some other means of supporting the auger and tube and negligently assumed that the stop hooks would serve the purpose of support was a question of fact for the jury. It was also a fact question for the jury whether the defendant should have anticipated the dangers arising out of the process of restringing the cable and whether the defendant was negligent in not informing the purchaser as to the manner in which that process was to be performed.

This conclusion is supported by two comparatively recent Minnesota cases. In Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 325, 79 N. W. (2d) 688, 693, we said that a manufacturer of a chattel may become liable:

"* * * if he knows or should know that the chattel is apt to cause bodily harm if not used in a specific manner [for a purpose for which it was intended] if he fails to furnish adequate warning as to the dangers inherent in its use. If the manufacturer undertakes by printed instructions to advise of the proper use to be made of a chattel, he assumes the responsibility of giving accurate and adequate instructions with respect to the dangers inherent in its use in some other manner."

In the present case, as previously noted, the printed assembly instructions did not mention what would constitute proper or improper use of the stop hooks. The second case, Hartmon v. National Heater Co. 240 Minn. 264, 60 N. W. (2d) 804, is precisely in point. There the decedent in attempting to start a gas burner removed a plug which he thought would "bleed" air from the fuel line. However, the effect of such removal

was to allow gas to flow into the combustion chamber. Because of this accumulation, the burner exploded in an attempt to start it. On that particular model of gas burner the plug which was removed was useless and intended by the manufacturer to serve no function. We there held that it was for the jury to determine whether the defendant reasonably should have anticipated that inexperienced operators of its burner would follow the course taken by the decedent and whether the defendant was negligent in failing to provide a warning as to the danger attendant upon such course by furnishing adequate instructions.

■ The next point raised by the defendant is that the court erred in instructing the jury on the theory of res ipsa loquitur.[2] The trial court instructed the jury in conformity with our established definition of res ipsa loquitur as set forth in Johnson v. Coca Cola Bottling Co. 235 Minn. 471, 51 N. W. (2d) 573. This instruction was correct as an abstract proposition of law. In general the doctrine of res ipsa loquitur permits an inference of negligence from the circumstances of an accident. It is properly applied where the defendant is in control of the situation or instrumentality and the fact of the accident shows that someone has been negligent.[3] However, it is well established that the doctrine has no application where all of the facts and circumstances appear in evidence, nor has it any application where the cause of the

---

[2] The use of res ipsa loquitur in Minnesota is now governed by Rule 43.06 of the Rules of Civil Procedure. This rule is declaratory of Minnesota decisions which had held that res ipsa loquitur is nothing more than a form of circumstantial evidence from which an inference of negligence is permissible. Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102. Our common law has always permitted use of the doctrine where specific evidence was alleged or introduced so long as the specific evidence did not conclusively establish the cause of the injury. Wright, Minnesota Rules, p. 263; 36 Minn. L. Rev. 679, 680.

[3] The requirements for application of the doctrine are as follows: (1) Plaintiff must have been injured by an apparatus or instrumentality whose nature is such that injury is not ordinarily to be expected in the absence of negligence; (2) at the time of the injury both inspection and user must have been in the exclusive control of the defendant; and (3) the injurious condition or occurrence must not have been due to any voluntary action on the part of plaintiff. See, Johnson v. Coca Cola Bottling Co. 235 Minn. 471, 476, 51 N. W. (2d) 573, 576.

accident is known and is not in question. 38 Am. Jur., Negligence, § 303; Heffter v. Northern States Power Co. 173 Minn. 215, 217, 217 N. W. 102, 103; Klingman v. Loew's Inc. 209 Minn. 449, 296 N. W. 528; Cullen v. Pearson, 191 Minn. 136, 253 N. W. 117, 254 N. W. 631; Anderson v. Eastern Minnesota Power Co. 197 Minn. 144, 266 N. W. 702; Johnson v. Bosch, 178 Minn. 363, 227 N. W. 181. In the case before us the evidence fully discloses the facts constituting the alleged negligence which resulted in the fatal injury. The accident resulted because the stop hooks, which were made of ¼-inch hot rolled steel, were too weak to support the auger tube and therefore gave way allowing the auger arms to collapse. Under the circumstances there is nothing left to inference. The cause of the accident is known and not in question.

■  Since we are of the view that the theory of res ipsa loquitur was clearly inapplicable, we inquire next as to whether the defendant was prejudiced by the instruction. In explaining the doctrine of res ipsa loquitur, the court told the jury that "it means that the accident itself and the surrounding circumstances may afford sufficient evidence of negligence to permit and allow you to draw such an inference, unless you find that there has been a satisfactory explanation of the occurance [sic] by the defendant" and that under the doctrine if the jury found from the evidence "that the defendant company had exclusive control of the instrumentality causing the harm * * * and * * * that the accident claimed is of the type or kind that ordinarily would not have occurred had those having control of the instrumentality exercised proper care, then you may infer from the accident and the surrounding circumstances that there was negligence on the part of the defendant, unless the defendant has offered a satisfactory explanation of the occurrence. The control which would warrant you in drawing an inference of negligence need not necessarily be control at the time of the accident, but may be control at the time of the negligent act or omission, if any, which subsequently resulted in an injury. * * * The control that the defendant exercised would carry over to the time of the occurrence, if the instrumentality causing the harm were not properly used or interfered with, and used only in the normal manner in which it is intended by the defendant to be used." It is our view that the

instruction with reference to res ipsa loquitur may well have confused the jury to the defendant's prejudice. Moreover, we do not think there was such exclusive control of the instrumentality as is essential to the application of the rule of res ipsa loquitur. Johnson v. Coca Cola Bottling Co. 235 Minn. 471, 51 N. W. (2d) 573.

Neither do we think that the instruction was an "impertinent abstract instruction" as contended by the plaintiff. It is true, as stated in 14 Dunnell, Dig. (3 ed.) § 7172, that no reversible error is presented where the only basis for the error with respect to the court's instruction is that it states a correct principle of law not applicable to the facts in the case. However, we do not think that the instruction given by the court in this case was an impertinent instruction within this general rule. As in Braley v. Byrnes, 21 Minn. 482, 485, the instruction before us went beyond stating a mere abstract principle of law. The instruction applied to certain facts in the case which, although not material, are so closely connected with the issues that the jury may well have believed that they had a material bearing on the issues. We are of the view, accordingly, that the jury may have been misled and confused to the defendant's prejudice and that a new trial should be granted. See, also, Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814.

The other issues raised in the brief do not require discussion.

Reversed and new trial granted.