ADOLPH LANDO v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

October 30, 1900.

Nos. 12,188—(9).

### Death by Wrongful Act—Wilful Negligence.

The trial court is not required to submit the question of defendant's wilful negligence to a jury, when, in a suit for personal injuries, the evidence goes no further than to indicate want of ordinary care on the part of defendant's servants. Under such circumstances, it would be error to do so.

### Same—Evidence.

Evidence in this case considered, and *held* that plaintiff's intestate contributed to his injury by his own want of ordinary care, and that there was no evidence of an intention to injure him, or wilfully disregard his rights in the premises.

### Dismissal of Case.

The trial court did not abuse its discretion in refusing to dismiss this case, on plaintiff's request, at the close of his case, and the verdict for defendant was properly directed.

Action in the district court for Ramsey county by plaintiff as administrator of the estate of Andrew Fisher, deceased, to recover $5,000 damages on account of decedent's death. The case was tried before Kelly, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*S. C. Olmstead,* for appellant.

*Pierce Butler* and *Thomas Wilson,* for respondent.

[1] Reported in 83 N. W. 1089.

LOVELY, J.[2]

In this action plaintiff seeks to recover for the death of his intestate, Andrew Fisher, occasioned by injuries sustained at the St. Paul yard of defendant through the alleged negligence of its servants in the operation of a switch engine. At the conclusion of the evidence, counsel for plaintiff requested permission to dismiss the action, which was refused by the trial court. Upon motion of defendant's counsel, the court then directed a verdict in defendant's favor. These two orders are properly here for review upon the whole evidence, and present the only questions for our serious consideration.

The defendant's yard, where the accident occurred, is located under and adjacent to the Third street bluff of the city of St. Paul, at the eastern portion of which is the south and rear side of the West Publishing House. The tracks in defendant's yard, with numerous switches, extend along the foot of the bluff west of the publishing house some four hundred feet; at a point midway between the east and west ends of the yard there was a plank crossing extending sixteen feet in width transversely across the tracks, which crossing, for the purposes of this case, may be treated as a public way. With the exception of this crossing, the tracks in the yard were used exclusively for railroad purposes; and at the time of the injury to Fisher he had no license from defendant to be thereon, or occupy the same for any purpose.

Intestate was familiar with the location of the tracks, and had been in the habit of driving over them on his private business to a point near the West building once each week for some time previous to his death. On the occasion in question he drove a single horse and wagon into the yard, and stopped on one of the tracks opposite the West building, where he was engaged for some time in loading sacks with waste paper to be hauled away. At this time one of defendant's switch engines, with an engineer and fireman, was on the same track, a short distance east of the wagon. The engine was headed to the east, and coupled to a stock car in front, which was to be pulled to the western end of the yard. To reach that

2 BROWN, J., absent, took no part.

destination, the engine and car had to pass over the place where Fisher's wagon then was; and deceased was requested to move from the track, so that the engine might pass over the same, which he did after he had finished loading. He then moved west at an ordinary pace over the tracks through the yard, driving his horse and walking on the south side of his wagon. Soon after, decedent was followed by the switch engine, backing tender ahead. Its bell was ringing, and it was moving at a speed of not more than four miles an hour until the plank crossing was reached. Deceased at this time had reached the crossing, and turned towards the south, probably intending to pass over the same and out of the yard on a traveled way, which was the only means of exit therefrom; but, when the horse got to the track on which the engine was approaching, it shied suddenly and turned to the right, again going upon the tracks, in the yard, to a point about ten feet west of the crossing, where deceased was overtaken by the engine and crushed between the tender and his wagon, receiving such internal injuries that he died.

It cannot be doubted that Fisher must have known of the proximity of the engine before, as well as at the time, the collision occurred, and it is quite doubtful if he could have passed to the south, in front of the same, to the traveled way. Yet it is conceded that he might have stopped until the engine had passed, or by the slightest effort turned to the right and avoided the collision. It was insisted that while plaintiff's intestate may have been negligent in using the defendant's tracks and yard, and in being too near the place over which the engine must pass, yet the fact that the engine had previously stopped for him to finish loading his wagon gave him some right to believe that the persons in charge of the same would continue to exercise more than usual care to avoid injuring him. This position is not tenable. While the deceased was upon the tracks in the yard, except at the crossing, he was a mere trespasser in a place where defendant's rights were exclusive; and he could not demand more from its servants than that they should not, after the discovery of his peril, be wantonly or wilfully negligent. Donaldson v. Milwaukee & St. P. Ry. Co., 21 Minn 293; Smith v. Minneapolis & St. L. Ry. Co. 26 Minn. 419,

4 N. W. 782. The fact that the engine had waited for intestate to load his wagon shortly before did not give him the right to encounter unnecessary danger thereafter, nor enforce upon the persons in charge of the engine an expectation that he would do so, nor require them to be unusually careful through fear that he might. They had the right to suppose that he would exercise ordinary prudence himself, and to act upon such presumption, in the absence of knowledge that he was in actual danger. Johnson v. Truesdale, 46 Minn. 345, 48 N. W. 1136.

If it be conceded that after the deceased went upon the crossing he had a right to pass over the same and out of the yard by the traveled way, such right was not absolute, but subject to the use of the tracks by defendant's engine. Clearly, such right was no greater than that of travelers at railroad grade crossings; and if deceased, when upon the crossing, negligently passed in front of the engine, or approached too near the tracks, he did so at his peril, and defendant cannot be held responsible for any injury occasioned by his negligence in that respect. Westaway v. Chicago, St. P., M. & O. Ry. Co., 56 Minn. 28, 57 N. W. 222. Judson v. Great Northern Ry. Co., 63 Minn. 248, 65 N. W. 447.

It is urged here that there was evidence to establish such a disregard of human life by defendant's servants in charge of the engine as to require a submission of that question to the jury. It is not sufficient to require such submission, that there is evidence from which a jury might infer that defendant's servants were negligent and failed to use ordinary care in the premises, but there should be some evidence from which an inference can be drawn of an act or omission indicating a wilful disregard of life, or an actual intention to injure the deceased. The actual relation of the engine to the intestate immediately preceding the collision is detailed by the fireman, Busse, who is the only witness who gives an account of what occurred at the critical moment. He states that the tender backed upon the crossing very near the wagon; that deceased was at that time in a position of safety, but that he turned his horse towards the south, as if to go over the crossing, and, as soon as he reached a point in dangerous proximity to the engine, he (the fireman) quickly gave two distinct signals to the engineer to stop the engine (the engineer

being on the other side of the cab, at the levers, the signals had to be transmitted from the fireman to him); and that the engineer immediately reversed his engine, and did all that was necessary to stop the same, but the engine did not stop until at the instant of the collision. Neither the fireman nor the engineer can with the slightest reason, upon this showing, be held responsible for any intentional or wilful misconduct in not stopping the engine sooner.

The distinction between want of ordinary care which applies to injuries from negligence, where the relations of the parties are mutual, and the obligations to exercise care to avoid injury to a person in peril, when the recovery depends upon proof of wilful neglect of the person upon whom care is imposed, is quite clear, and has been pointed out in former decisions of this court. Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 74 N. W. 166; Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N. W. 168. This is a distinction that a trial court must recognize, and it should not submit a case to a jury in which the recovery depends upon proof of wilful neglect or reckless disregard of human life, where the evidence goes no further than to support the charge of want of ordinary care by the person upon whom such duty is imposed. In other words, evidence which shows negligence usually will not justify a submission of a cause when proof is required of a wilful intent to injure.

At the close of the evidence plaintiff's counsel was disappointed by unexpected answers of an expert witness, who could not state the number of feet within which an engine, under the circumstances above stated, could be stopped at the critical moment. In reply to the request of plaintiff's counsel for leave to dismiss the action, the trial court asked, in substance, whether, if the case was dismissed, and there should be another trial, the plaintiff would be able to produce additional testimony, to which inquiry counsel responded that he would not be able to furnish further testimony of the accident, but expected to be able to furnish testimony which would indicate that the engine could have been stopped before the deceased was struck. The trial court thereupon refused to allow a dismissal, and directed a general verdict for the defendant.

Ordinarily courts are very liberal in granting the favor asked for in this case, when counsel are mistaken or surprised in the produc-

tion of testimony to their disadvantage, and we think wisely so; but it is impossible, after a careful reading of the evidence in this case, to avoid the conclusion that a new trial would not benefit the plaintiff, or enable him to produce evidence which would have convicted defendant's engineer or fireman of a wilful intention to injure plaintiff's intestate. This alone would subserve his purpose on another trial of the case, or require its submission to the jury. The right, under the statute, to have a case dismissed after the trial had been commenced, rests in the sound discretion of the trial court. Althen v. Tarbox, 48 Minn. 1, 50 N. W. 828. And it does not appear to us that such discretion was abused in this respect.

The disposition we have made of this case renders it unnecessary to consider further assignments of error.

Order affirmed.