## GEORGE N. ERICKSON v. NORTHERN MINNESOTA NATIONAL BANK OF DULUTH.[1]

December 7, 1951.

No. 35,420.

*Smythe & Lindquist*, for appellant.

*Nye, Montague, Sullivan, Atmore & McMillan* and *Richard H. Hastings*, for respondent.

CHRISTIANSON, JUSTICE.

Plaintiff appeals from a judgment for defendant entered in a personal injury action pursuant to the jury's verdict.

[1]Reported in 50 N. W. (2d) 489.

Plaintiff (George N. Erickson), his wife, and three children occupied, as tenants, one of the apartments in an apartment building owned and operated by defendant in the city of Duluth. The building is located at 316 East Second street. The door at its main entrance is about 6 feet 9 inches high, 3½ feet wide, and has a wooden frame 2¼ inches thick. There was a plate-glass panel in the door which extended from about knee height to within a few inches from the top of the door, a height of 53 inches. The glass panel was one-quarter of an inch thick and 30 inches wide, with the two top corners of the glass clipped off diagonally. The door opened from the inside. A large-sized Corbin door control was attached to the door to regulate its opening and closing.

On July 27, 1949, plaintiff, his wife, and Mrs. Edith Carlson, another tenant of the building, were sitting just outside of the building on one of two low cement retention walls about six inches wide which extend about six or seven feet out from the building on either side of the main entrance doorway. Just inside the doorway and a few feet from where the Ericksons and Mrs. Carlson were sitting, two daughters of the Ericksons were playing with two other children. The main entrance door was latched open so that it would not close unless released. One of the playmates of the Erickson girls released the latch which held the door open, and at that instant Barbara Erickson, plaintiff's three-year-old daughter, put her hand on the doorframe into which the door was about to close. Plaintiff, upon observing his daughter's peril, immediately arose from where he was seated and proceeded quickly to the doorway. He extended his right arm so as to prevent the door from closing on his daughter's hand. When his hand came in contact with the glass panel, the glass broke and the lower two-thirds of the panel came out of the door. Plaintiff went partially through the door, so that his body straddled the door with the upper half inside the door and the lower half remaining outside. As a result, plaintiff sustained cuts upon his right forearm and knee and other injuries.

The testimony for plaintiff at the trial was to the effect that the glass panel was loose in the door and that for some time prior to

July 27, 1949, the Corbin control which hydraulically regulated the closing of the door had not been operating properly; that the door would close very rapidly up to a point about six inches from the frame of the door, when it would stop abruptly, tremble, and then close slowly. However, the testimony in defendant's behalf was that this was a normal and proper action for a door of this size equipped with a Corbin control; that the wooden moldings which held the glass panel in the door were tight and secure; and that there was nothing defective with either the door or the door control at the time of plaintiff's injury.

The issues of negligence and contributory negligence were submitted to the jury. The jury returned a verdict in defendant's favor. Thereafter, plaintiff made a motion in the alternative for a dismissal of his action without prejudice or a new trial. Both motions were denied. At the trial plaintiff had moved for such a dismissal, but his motion was denied. On appeal, plaintiff has assigned as error a number of the court's rulings made at the trial.

■ One of the principal errors assigned is the exclusion of certain expert testimony offered by plaintiff in his case in chief.

John Rossberg, a building contractor, was called as an expert witness by plaintiff. His preliminary testimony disclosed that he had considerable experience in the repair of door controls, and that the evening prior to the trial he had examined the main entrance door to the building in question. Thereafter he was asked: "Did you make a test as to how it works, how it functions?" Defendant objected to the question on the grounds of remoteness and lack of proper foundation. The objection was sustained, although the previous testimony of other witnesses had shown that the door closed in the same manner at the time of trial as it had during the latter part of July 1949. Plaintiff offered to prove by the witness that the control mechanism on the door was defective and that the door did not close properly. Since Rossberg's examination of the door was not made until about six months after the accident, and since no previous showing had been made that the door or the door control was in the same condition as just prior to plaintiff's injury, the

trial court was of the opinion that the proof offered was too remote. At most, the reception of such proof was discretionary with the trial court, and it was not error to exclude the proffered testimony for remoteness. Cf. Kugling v. Williamson, 231 Minn. 135, 42 N. W. (2d) 534; Winters v. M. & St. L. R. Co. 131 Minn. 181, 154 N. W. 964. Moreover, Rossberg was later permitted to give his opinion of the cause of the door operating as it had during the latter part of July 1949, according to the preceding witnesses. He attributed the door's irregular movement in closing to a lack of proper hydraulic action in the Corbin control itself, and suggested the probability that the fluid within the control mechanism itself had leaked out. Since the more pertinent proof was later received in the form of opinion evidence from the witness, the ruling complained of would not constitute reversible error in any event.

Later, in his direct examination, Rossberg was shown plaintiff's exhibit A, a piece of broken plate glass about 8 inches long and 3½ inches wide, which previously had been received in evidence. This exhibit was a piece of the glass panel that had been in the door. It had been swept up after the accident by defendant's janitor and thrown into the garbage, where it had been picked up by plaintiff's wife the same day. Although the evidence disclosed that the exhibit was in the same condition as it was when she found it, no showing was made as to what portion of the glass panel it had come from. There were strips of hard putty on the edge and along one side of the exhibit. Rossberg was asked a series of hypothetical questions predicated upon his examination of the exhibit. The questions called for his opinion as to (1) whether putty had been used on both sides of the glass panel when it was originally installed in the door; (2) whether on the day of the accident the glass panel was securely and firmly held in the door; and (3) whether the door at that time was in a good or bad state of repair. Defendant's objections to these questions on the grounds of no proper foundation and that they assumed a state of facts not in evidence were sustained by the trial court. The rulings with respect to the last two questions were obviously correct. Since no offer of proof was made and the record

fails to disclose that the location of the putty on the glass panel contributed in any way to the happening of this unfortunate accident, the court's ruling with respect to the first question must also be sustained.

■ Plaintiff further contends that the trial court abused its discretion in denying his motion for a dismissal of his action without prejudice prior to the final submission of the case. Such a motion is authorized by M. S. A. 546.39(3), and is addressed to the sound discretion of the trial court. Althen v. Tarbox, 48 Minn. 1, 50 N. W. 828; Lando v. C. St. P. M. & O. Ry. Co. 81 Minn. 279, 83 N. W. 1089. Although plaintiff's motion was made before he had rested his case in chief, the trial had progressed into its second day when the dismissal without prejudice was requested. The only ground urged in support of the motion was surprise at the court's rulings excluding the foregoing expert testimony. In view of defendant's opposition to the motion and all the circumstances presented, the denial of plaintiff's motion was not an abuse of discretion.

■ At the conclusion of all the testimony, plaintiff moved that the jury be permitted to view the premises and particularly the door in question. This was denied. The granting of a jury view is discretionary with the trial court. § 546.12; Carl Lindquist & Carlson, Inc. v. Johanson, 182 Minn. 529, 235 N. W. 267; 6 Dunnell, Dig. § 9721. Clearly, it was not an abuse of discretion to deny this request.

■ Although no objection was made at the trial, and none is urged here, with respect to the trial court's general charge to the jury, objection is made to the supplemental charge given in response to the jury's request for additional instructions. The record discloses that after the jury had been considering the case for some time it returned to the courtroom for further instructions and, in the absence of counsel, the following proceedings took place:

"Juror Pratt: There seem to be some doubt in the minds of quite a number of us as to what extent we have to be reasonably certain that the defendant was negligent. To what extent must we

base that opinion on the testimony that was presented or to what extent we can go on what we think the situation was?

"The Court: Probably this will explain it. The burden of proof is upon the plaintiff to prove the negligence of the defendant, and he must prove it by the weight of evidence. This is the portion I read this morning: You are instructed that the burden of proving negligence is based [*sic* placed] on the plaintiff, that is Mr. Erickson. In the event you find the evidence on the issue of the burden of proof is evenly balanced, it is your duty to bring in a verdict for the defendant. If we looked at the scales of justice, as if they were here, and you felt that the evidence was evenly divided, you would have to bring in a verdict for the defendant. The only way you could bring in a verdict for the plaintiff is if you felt that the scales preponderated in favor of the plaintiff on the question of negligence, the weight of the evidence would have to be on the side of the plaintiff before you could bring in a verdict against the defendant. If you felt the scales were even, you would have to bring in a verdict for the defendant. Does that answer your question?

"Juror Pratt: As far as I am concerned. I don't know about the rest of the jury.

"The Court: All right, that is all. You may return to the jury room."

Plaintiff does not contend that the supplemental instructions were not a correct statement of the law on burden of proof. However, he primarily assigns as error what he feels to be undue repetition of the phrase "bring in a verdict for the defendant," or words implying that result. While argumentative instructions are to be condemned, viewing these instructions in light of the court's general charge to the jury and from a practical, common-sense point of view, as we should (Mailand v. Mailand, 83 Minn. 453, 455, 86 N. W. 445; Roach v. Roth, 156 Minn. 107, 110, 194 N. W. 322, 323, 324), we find no reversible error.

It is true that the court failed to directly answer that part of Juror Pratt's question which was concerned with the propriety of determining defendant's negligence on the basis of what the jury

238

thought the situation to be at the time of plaintiff's injury. The court might properly have further instructed the jury that it could consider only the evidence that had been received at the trial. However, since this had been adequately covered in the general charge and was clearly implied by the supplemental instructions given and since it affirmatively appears that the jurors were satisfied with the answer given in response to their questions, the failure to give such an instruction was, at the most, harmless error.

The remaining assignments of error have been carefully considered, but we find no grounds for reversal presented.

Affirmed.