**Fred LAUZON**

v.

**SENCO PRODUCTS, INC.**

**No. 99–CV–845.**

United States District Court,
D. Minnesota.

Dec. 7, 2000.

Gary Thomas LaFleur, Babcock Neilson Mannella, LaFleur & Klint, Anoka, MN, for Fred Lauzon, plaintiffs.

Ann Marie Hanrahan, Kristin R Eads, Faegre & Benson, Mpls, Beth Schneider Naylor, Frost & Jacobs, Cicinnati, OH, Ralph Valitutti, Kitch Drutchas Wagner DeNardis & Valitutti, Mount Clemens, MI, for Senco Products, Inc., defendants.

ORDER

ROSENBAUM, District Judge.

This matter is before the Court on defendant's motion challenging the testimony of plaintiff's expert witness, H. Boulter

Kelsey. The motion is based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590–92, 113 S.Ct. 2786, 2794–96, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); and Rule 702 of the Federal Rules of Evidence. Fed.R.Evid. 702. Defendant further moves for summary judgment pursuant to Fed.R.Civ.P. 56, for plaintiff's failure to provide admissible evidence of causation if Mr. Kelsey's testimony is stricken. Defendant's motions are granted.

I. *Background*

In December, 1997, Fred Lauzon, a carpenter, was injured while using a bottom-fire pneumatic nailer designed and manufactured by defendant, Senco Products, Inc. ("Senco"). This tool is designed to drive nails commonly used in roofing in two different ways. It can drive a single nail when both the trigger and the safety element are depressed, and it can also rapid-fire nails when the operator depresses the trigger and bounces the contact point off of the work. The bottom-fire nailer is designed to function in this repeat-fire mode when speed is important.

Senco also produces a second, sequential-fire, nailer. This tool will only drive a nail if the safety element is first depressed, and then the trigger is pulled. The trigger must be released and squeezed each time to fire a nail. This type of nailer is marketed for situations where precision is valued over speed.

On the day of the accident, Mr. Lauzon was using a bottom-fire nailer while roofing a garage. He was lying on the edge of the roof, nailing a 2 × 6 board, using his left hand under the overhang to support the board. Mr. Lauzon claims that after properly driving one nail into the wood, the nailer fired two additional nails into mid-air without his activating the tool in any way. Mr. Lauzon believes the first nail deflected off of a ladder, and the second nail fired into his left thumb.

While Mr. Lauzon is unsure of all the details of his injury because it happened so quickly, he unequivocally states that the accident was not the result of a "double-fire." A double-fire occurs when the tool cycles twice before the user is able to remove the safety element from the surface of the work, thereby unintentionally approximating the rapid-fire mode and driving a second nail in rapid succession after the first.

Mr. Lauzon was working with Steve Nelson on the day he was injured. Mr. Nelson has submitted an affidavit, dated May 26, 2000, stating he does not believe the gun double-fired, and alluding to the possibility that Mr. Lauzon may have been using the nail gun in a hazardous manner. In a second statement, dated June 16, 2000, Mr. Nelson modifies his belief slightly, in that he claims he does not "specifically remember one way or the other" whether the gun double-fired or misfired.

II. *Discussion*

A. *The Expert Witness's Contentions*

Plaintiff concedes that the only issue concerning the tool is defective design. In an attempt to prove defective design, plaintiff retained H. Boulter Kelsey as his expert witness. Mr. Kelsey is an engineer, who, for the past 19 years, has derived 90% to 95% of his income from expert legal work. [Affidavit of Ann Marie Hanrahan, Ex. C, at 3].

Mr. Kelsey rendered an opinion stating that "Mr. Lauzon's recollection of the accident is in error." [Affidavit of Ann Marie Hanrahan, Ex. I, at 6]. According to Mr. Kelsey, the accident did not happen as described by plaintiff. Instead, Mr. Kelsey opines that the accident was caused by either a double-fire or a misfire of the tool. He further states that the design of the bottom-fire tool is defective, because it has the potential to double-fire, and thus, is unreasonably dangerous. In his opinion, the sequential-fire nailer is equivalent to the bottom-fire nailer and, because the

sequential-fire tool is much safer, the inherently dangerous bottom-fire tool should no longer be on the market.

Defendant objects to Mr. Kelsey's testimony because (1) there are no record facts to support it; (2) the opinion fails to meet the *Daubert/Kumho* standards for reliability; and (3) Mr. Kelsey's testing does not support his causation theory.

B. *Analysis*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, by providing:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702

In considering Rule 702, the Supreme Court has emphasized the trial court's role as gatekeeper when screening expert testimony for relevance and reliability. *Daubert,* 509 U.S. at 591–93, 113 S.Ct. at 2796. This gatekeeping function applies to specialized expert testimony, such as that offered by engineers. *Kumho Tire v. Carmichael,* 526 U.S. 137, 147–148, 119 S.Ct. 1167, 1174–75, 143 L.Ed.2d 238 (1999); *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1082–83 (8th Cir.1999).

The *Daubert* opinion provides a number of nonexclusive factors a court might use to inform its gatekeeping. These factors include, among others: "(1) whether the theory or technique can be (and has been) tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory has been generally accepted." *Peitzmeier v. Hennessy Indus., Inc.,* 97 F.3d 293, 297 (8th Cir.1996), quoting *Daubert,* 509 U.S. at 594, 113 S.Ct. 2786. The Court finds the plaintiff's expert opinion does not conform with any of *Daubert*'s suggested factors.

1. *Testing*

Although Mr. Kelsey attempted to test his theory that the nailer double-fired or misfired by trying to duplicate the events of the accident, he was entirely unable to do so. Further, he was unable to rule out other accident theories, except for ruling out a manufacturing defect. His theory that the nailer double-fired or misfired has simply not been borne out in testing.

2. *Peer Review or Publication*

Mr. Kelsey's theory of the cause of the accident has never been subjected to peer review, nor has it been published. While he did publish a single article in the *Journal of the National Academy of Forensic Engineers*—a journal devoted primarily to other "professional" expert witnesses—the article discussed nail guns generally. Mr. Kelsey recounted several different nail gun cases in which he testified, and while those cases involved similar nail guns, none of them involved the specific nail gun at issue here. H. Boulter Kelsey, Jr., *Forensic Engineering Aspects of Nail Gun Litigation,* XV Journal of the National Academy of Forensic Engineers, June 1998, at 1. Indeed, other than Mr. Kelsey's own observations, the only literature submitted to the Court to accompany his opinion is a technical report conducted by the State of Washington on nail gun injuries and an article from a magazine called *Fine Homebuilding.* The technical report is predominately a study of the frequency and cost of injuries related to nail guns and their corresponding worker's compensation claims, and the article from *Fine Homebuilding* provides no empirical support for Mr. Kelsey's theory. The Court does not consider these articles to be the type of peer-reviewed literature contemplated by *Daubert.*

3. *General Acceptance*

Plaintiff has not demonstrated that Mr. Kelsey's theories are accepted at all—let alone that they are generally accepted by the relevant scientific community.[1] The Court recognizes that *Daubert*'s factors are not exclusive, *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786, but plaintiff has been unable to show that any *Daubert* factor has been fully satisfied. Beyond this, while Mr. Kelsey is a trained engineer, his curriculum vitae shows very little to qualify him as an expert in pneumatic nail guns. Thus, the Court finds Mr. Kelsey's testimony is unreliable and properly excluded.

4. *Other Factors*

There is a significant, additional problem with Mr. Kelsey's proffered testimony. Both he and the plaintiff agree that his theory does not match the plaintiff's recollection or version of the accident. This is not trivial, because plaintiff's injury is, after all, the critical event in this case. Plaintiff insists that no double-firing occurred to cause his injury. Therefore, if Mr. Lauzon is accurate, the alleged design defect of the bottom-fire tool—its ability to double fire—cannot be the proximate cause of his injuries, and therefore, is not relevant.[2] *See Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1084 (8th Cir.1999) (holding that the expert's testimony should be excluded on reliability as well as relevancy grounds). Consequently, defendant's motion to exclude the testimony of plaintiff's expert witness is granted.

C. *Summary Judgment*

Summary judgment is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. *See Anderson,* at 248–49, 106 S.Ct. 2505; *see also Hartnagel v. Norman,* 953 F.2d 394, 395–96 (8th Cir.1992). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.,* 838 F.2d 268 (8th Cir. 1988). Here, in order to survive summary judgment, plaintiff must show genuine issues of material fact under his product liability theory.

In Minnesota, a product liability plaintiff must show that defendant's product was in a defective condition and unreasonably dangerous for its intended use; that the defect existed when the product left the defendant's control; and the defect was the proximate cause of the plaintiff's injury. *See Lee v. Crookston Coca–Cola Bottling Co.,* 290 Minn. 321, 321, 188 N.W.2d 426 (1971); *Bilotta v. Kelley Co.,* 346 N.W.2d 616, 623 n. 3 (Minn.1984); *Kallio v. Ford Motor Company,* 407 N.W.2d 92, 96 (Minn.1987) (holding that plaintiff must establish both the product's defective condition and that it was unreasonably dangerous).

Absent the now-excluded testimony of Mr. Kelsey, plaintiff is unable to establish

1. Both parties' briefs acknowledge that the third *Daubert* factor—the known or potential rate of error—is not applicable here.

2. The Court cannot gainsay the conceivability that, in the swirl of events surrounding his injury, the plaintiff's recollection may be in error. There are, however, two problems with this conception: First, the plaintiff denies it. Second, the evidence is closed; there is no expert testimony suggesting that this could happen. In the absence of competent evidence, there is only rank conjecture to support a kind of "spontaneous amnesia" theory. This is not evidence on which a jury can find a causation.

either the existence of a defect, or that a defect was the proximate cause of the injury—both essential elements of his claim. Accordingly, summary judgment for the defendant is granted.

III. *Conclusion*

For the reasons set forth above, IT IS ORDERED that:

1. Defendant's motion to exclude the testimony of plaintiff's expert witness, H. Boulter Kelsey, is granted [Docket # 17].

2. Defendant's motion for summary judgment is granted [Docket # 16].

LET JUDGMENT BE ENTERED ACCORDINGLY.